UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| WILLIAM SMEAL, ) | 1:19-cr-116-LEW |
| ) | |
| Defendant ) | |

## ORDER ON DEFENDANT'S MOTION TO SUPPRESS

On February 13, 2019, William Smeal was indicted on one count of possession with the intent to distribute 40 grams or more of a mixture or substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1). Mr. Smeal now moves to suppress "all evidence seized as the result of the unlawful search and seizure of Defendant's 2009 Mercedes Benz C-Class." Def's Mot. to Supp. (ECF No. 59 at 1).[1] For the reasons that follow, the motion is DENIED.

## BACKGROUND

On January 31, 2019, Special Agent Jacob E. Day of the Maine Drug Enforcement Agency applied for a warrant authorizing the installation and use of an electronic tracking device to be installed on a black 2005 Mercedes C-Class bearing license plate number ME PC 2012WD, and registered to William Smeal. Gov. Ex. 1. Special Agent Day provided

---

[1] The Defendant does not ask for an evidentiary hearing, and is not entitled to one because he has not made the required "substantial preliminary showing that a false statement (or omission) was (1) 'knowingly and intentionally, or with reckless disregard for the truth ... included by the affiant in the warrant affidavit,' and (2) 'necessary to the finding of probable cause.'" *United States v. Apicelli*, 839 F.3d 75, 81 (1st Cir. 2016)(internal citations omitted).

an affidavit accompanying his warrant application to show he possessed probable cause for the search. Gov. Ex. 2.

According to Special Agent Day's affidavit, as part of an ongoing investigation into drug trafficking involving the Defendant, he reviewed intelligence reports accumulated by the Maine Drug Enforcement Agency. *Id*. From his review, Special Agent Day learned that on December 17, 2018, Officer Andrew Weatherbee of the Ellsworth Police Department interviewed a concerned citizen ("CC1") during a traffic stop who reported that the Defendant was selling cocaine and anabolic steroids in a parking lot in Ellsworth. *Id*.

On January 23, 2019, Trooper Dana Austin informed Special Agent Day that he had received information from another concerned citizen ("CC2") that the Defendant was traveling to Massachusetts in his black Mercedes once per week to purchase one pound of cocaine, which the Defendant was then cooking into "crack." *Id*. Special Agent Day noted that "[t]he information Trooper Austin obtained from the concerned citizen came independently of Officer Weatherbee's source of information who had intimate knowledge of Mr. Smeal's activities. The information provided by Trooper Austin's concerned citizen corroborated the information provided by Officer Weatherbee's concerned citizen." *Id*.

On January 28, 2019, Trooper Austin informed Special Agent Day that he had spoken with the concerned citizen and learned that the Defendant had driven to Bangor to pick up cocaine a couple of days prior. *Id.* The concerned citizen further reported he had heard the Defendant's cocaine was "no good," and the Defendant was going to travel back to Massachusetts to get better cocaine. *Id*.

2

That day, Special Agent Day conducted a DMV registration check and found a 2005 black Mercedes C-Class with license plate ME PC 2012WD registered in the Defendant's name. *Id.* Special Agent Day was familiar with the Defendant, having surveilled him before, and so knew the Defendant lived at 2 Townhouse Way in Ellsworth, Maine. *Id.* When he drove by Townhouse Way on January 30, 2019, Special Agent Day found it appeared to be vacant. *Id.* At Special Agent Day's request, Trooper Austin again contacted the concerned citizen and found the Defendant was now residing in Hancock, in a mobile home park off of Maine Route 182. *Id.* Special Agent Day was familiar with the area and drove to the mobile home park, finding a motor vehicle bearing ME PC 2012WD, and Defendant's second vehicle, parked in the driveway. *Id.* Later that day, he sought and obtained the warrant Defendant challenges from a Justice of the Peace. Gov. Ex. 3.

After placing the electronic tracking device on the Defendant's vehicle on February 4, 2019, the Maine Drug Enforcement Agency was alerted on February 13, 2019 that the Defendant's vehicle was traveling to the area of Lawrence, Massachusetts. Gov. Ex. 4 at *4. As the Defendant's vehicle was returning northbound from Massachusetts, Special Agent Day conferred with an officer from the Police Department in Lawrence, Massachusetts, and learned that the Bunkerhill Street area of Lawrence, where the Defendant's vehicle had stopped, is a known area of illicit drug use. *Id.* at *5. That day, Special Agent Day sought and obtained a search warrant for the Defendant's vehicle. Gov. Exs. 4, 5. Maine Drug Enforcement Agents stopped the Defendant and his passenger, Savana Adams, in Ellsworth, Maine. Gov. Ex. 6. The Defendant and Ms. Adams were informed of their Miranda rights and interviewed separately. *Id.* A K9 sniff was also

3

conducted on the Defendant and Ms. Adams, with the K9 indicating on the Defendant's hands and on Ms. Adams' buttock area. *Id*. Inside the car, agents found a bag containing a brown powdery substance that Special Agent Day recognized to be suspected heroin. *Id*. The gross weight of the bag and its contents was 111.4 grams. *Id*.

Later on February 13, 2019, Special Agent Day sought and obtained a third search warrant, this time for the Defendant's residence located on Deerfield Drive in Hancock, Maine. Gov. Exs. 6, 7. On March 19, 2019, Special Agent Day learned from a confidential informant that the agents had missed more "dope" in the Defendant's motor vehicle. Gov. Ex. 8 at *6. To pursue this further lead, Special Agents Day and Smith sought and obtained another warrant for the search of the Defendant's vehicle, which was secured in a locked facility. Gov. Exs. 8, 9.

## ANALYSIS

The Defendant moves to suppress all evidence seized after issuance of the January 31, 2019 tracker warrant because Special Agent Day's affidavit lacked probable cause. ECF No. 58 at 7. The Defendant further argues that no good faith exception applies, despite law enforcement obtaining additional warrants every step of the way. *Id.* at 12. For the reasons stated below, I find that Defendant's arguments lack merit and the Motion is DENIED.

1. **LEGAL STANDARD**

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched—the so-called 'nexus' element." *United States*

*v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015)(quoting *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999)).

A magistrate's determination that probable cause exists is entitled to great deference. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *United States v. Wilder*, 526 F.3d 1, 6 (1st Cir. 2008). The First Circuit has recognized that "we give significant deference to the magistrate judge's initial evaluation, reversing only if we see no 'substantial basis' for concluding that probable cause existed." *United States v. Cordero-Rosario*, 786 F.3d 64, 69 (1st Cir. 2015). Even "[i]n a doubtful or marginal case, the court defers to the issuing magistrate's determination of probable cause." *United States v. Greenburg*, 410 F.3d 63, 67 (1st Cir. 2005).

"An affidavit serving as the basis for issuance of a search warrant is sufficient when it demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it." *United States v. Spinosa*, 982 F.2d 620, 625-26 (1st Cir. 1992)(internal quotations and citations omitted). Probable cause for a premises search exists if the information in the affidavit shows "a fair probability that contraband or evidence of a crime will be found in a particular place." *Procopio*, 88 F.3d at 25. There is no requirement that "the belief be shown to be necessarily correct or more likely true than false." *United States v. Woodbury*, 511 F.3d 93, 98 (2007); *Gates*, 462 U.S. at 231 ("In dealing with probable cause, … as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."). "A practical, common-sense assessment,

providing a substantial basis for the magistrate's finding of probable cause, is what is called for." *Feliz*, 182 F.3d at 87 (citing *Gates*, 462 U.S. at 238).

To determine whether the affidavit contains a sufficient showing of probable cause, I must consider a "nonexhaustive list of factors:"

> (1) whether the affidavit establishes the probable veracity and basis of knowledge of persons supplying hearsay information; (2) whether an informant's statements reflect first-hand knowledge; (3) whether some or all of the informant's factual statements were corroborated wherever reasonable or practicable (e.g., through police surveillance); and (4) whether a law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information.

*United States v. Gifford*, 727 F.3d 92, 99 (1st Cir. 2013). The affidavit must be viewed in its entirety and must be given a common-sense, rather than hypertechnical, interpretation. *United States v. Peake,* 804 F.3d 81, 87 (1st Cir. 2015). Moreover, the neutral and detached magistrate has the authority "to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant. . . or to refuse to draw them if he is so minded." *Gates*, 462 U.S. at 240.

Where a "concerned citizen" provides information to law enforcement and law enforcement therefore has no "track record' against which to assess that individual's "competence to convey accurate intelligence relating to criminal activities, or the trustworthiness of the informant's motives in volunteering information," that information should not be considered inherently suspect. *United States v. Scalia*, 993 F.2d 984, 987 (1st Cir. 1993). Rather, "where the informant was not a professional . . . but a private citizen with no known criminal record or other criminal contacts, who came forward on his own…, the informant's story may be more easily accepted." *Id*.; *United States v. Stewart,*

6

183 F. Supp. 2d 91, 102 (D. Me. 2002), aff'd, 337 F.3d 103 (1st Cir. 2003)(noting that three sources of intelligence information were "concerned citizens and, as such, the information provided by them has particular value in the probable cause equation"). Even where the sources of information are considered simply as general informants, the Supreme Court has recognized that "an informant's veracity, reliability and basis of knowledge are all highly relevant in determining the value of his report." *Gates*, 462 U.S. at 230. However, the Supreme Court also rejected the contention that "these elements should be understood as entirely separate and independent requirements to be rigidly enacted in every case…" *Id*. These elements "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id*.

### 2. PROBABLE CAUSE FOR THE JANUARY 31 WARRANT

Defendant argues the January 31 affidavit failed to establish probable cause because it did not provide first-hand information, and "fail[ed] to provide information relating to the veracity, basis of knowledge, or reliability" of the "concerned citizen[s]" hearsay statements. Def's Reply. at 4. Because I find the affidavit provided the magistrate with a substantial basis to conclude probable cause existed that evidence of a crime could be found by issuing a search warrant, and Defendant has not shown any lack of good faith on the part of Special Agent Day or other law enforcement officers, I will deny his motion.

Although the Defendant is correct that the affidavit contains hearsay statements, there several indicia of reliability that support the magistrate's conclusion that the affidavit established probable cause. For example, the First Circuit has recognized that the

7

reliability of an informant's information is buttressed if his/her identity is known because the informant is more accountable to the police and has a disincentive to fabricate information. *See, e.g., United States v. Brown*, 500 F.3d 48, 54 (1st Cir. 2007)("[S]ince [confidential informant] was known to the police, he could have been held accountable if his information proved inaccurate or false."); *see also United States v. Romain*, 393 F.3d 63, 73 (1st Cir. 2004)("In-person communications also tend to be more reliable."). In this case, law enforcement knew the identities of the two concerned citizens and met one face-to-face, adding to the reliability of their statements. Gov. Ex. 2. Officer Weatherbee knew CC1's identity and met with him or her in person, learning that the Defendant was selling cocaine and anabolic steroids in a parking lot in Ellsworth. Likewise, Trooper Austin knew the identity of CC2, who related that the Defendant was traveling once a week to Massachusetts in his black Mercedes to bring back cocaine. In keeping with First Circuit precedent, I find these statements are presumptively more reliable where, as here, law enforcement knew the identity of the sources, and met with at least one of them in person.

Defendant also contends that the two "concerned citizens" may, in fact, be one and the same person, undercutting the significance of the evidence in the January 31 affidavit. But the record does not bear this out. Special Agent Day's affidavit specifically states that "[t]he information Trooper Austin obtained from the concerned citizen came independently of Officer Weatherbee's source of information who had intimate knowledge of Mr. Smeal's activities." Gov. Ex. 1. Special Agent Day further noted that "[t]he information provided by Trooper Austin's concerned citizen corroborated the information provided by Officer Weatherbee's concerned citizen." *Id*. Because the evidence points to

8

the information coming from two separate sources, I do not find this argument undermines the magistrate's otherwise reasonable finding of probable cause.

That law enforcement made efforts to corroborate the "concerned citizen" reports likewise supports the magistrate's probable cause determination. Although Defendant argues the affidavit did not "show that [Special Agent Day] did anything to corroborate," he took several steps to substantiate the concerned citizens' reports. The First Circuit has recognized that "[c]orroboration may take various forms . . . and we have never intimated that surveillance is mandatory." *Scalia*, 993 F.2d at 988. On January 28, 2019, Special Agent Day conducted a DMV registration check on the Defendant and located a 2005 black Mercedes C-Class bearing ME PC 2012WD, backing up the description given by CC2. Special Agent Day also drove through the mobile home park in Hancock CC2 identified and observed Defendant's vehicle bearing ME PC 2012WD parked at a residence on Deerfield Drive. Special Agent Day did not simply race to the courthouse with the concerned citizens' reports to obtain a warrant. His significant corroboration bolsters the statements in his affidavit and supports the magistrate's finding of probable cause.

On this record, Special Agent Day's affidavit provided more than enough information for a magistrate to find probable cause that a crime had been or was being committed, that the Defendant's black 2005 Mercedes C-Class was being used to facilitate that crime, and that evidence of that crime would likely be found through the installation and use of an electronic tracking device. *See United States v. Schaefer*, 87 F.3d 562, 565 (1st Cir. 1996).

    3. **GOOD FAITH**

Additionally, even if Special Agent Day's affidavit did not establish probable cause, the good faith exception would preclude suppression. *See United States v. Leon*, 468 U.S. 897, 922, (1984)(holding the exclusionary rule should not bar evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid); *United States v. Owens*, 167 F.3d 739, 745 (1st Cir. 1999)(same). Nor would this case fit within one of the four categorical exclusions to the good faith exception. *See Owens*, 167 F.3d at 745 (listing exclusions). The Defendant does not argue that any of these exclusions applies, and Special Agent Day's affidavit had sufficient indicia of probable cause "to render official belief in its existence" reasonable. *Leon*, 468 U.S. at 923. Moreover, the affidavit confirms that Special Agent Day, in fact, believed such probable cause existed, stating: "I hereby swear under oath and state that the information in my affidavit dated January 31, 2019 is true and correct to the best of my knowledge, information and belief, and that I have probable cause to install the electronic tracking device on the basis of the information contained in all of the preceding pages." Gov. Ex. 1. The Warrant was not so lacking in probable cause that "a reasonably well trained officer" would have known "that the search was illegal despite the [judge's] authorization" in the warrant," *United States v. Jenkins*, 680 F.3d 101, 107 (1st Cir. 2012). Therefore, the good-faith exception would support the admission of the seized evidence even if the magistrate's probable cause determination was insufficient.

## CONCLUSION

Based on Special Agent Day's investigation and subsequent corroboration, I find there is sufficient evidence in the record to support the magistrate's finding of probable

cause and the issuance of the January 31 warrant. And even without probable cause, the good faith exception to the exclusionary rule would apply; Special Agent Day and the other law enforcement agents involved in this case acted in good faith in obtaining facially valid search warrants and searching within the scope of those warrants. For these reasons, Defendant's Motion to Suppress (ECF No. 59) is **DENIED**.

**SO ORDERED.**

**Dated this 1st day of November, 2019.**

                                                  /S/ LANCE E. WALKER
                                                  DISTRICT COURT JUDGE